# United States Court of Appeals
## For the First Circuit

No. 08-9006

IN RE DAVID HILL,

Debtor.

STORNAWAYE FINANCIAL CORPORATION,

Plaintiff, Appellant,

v.

DAVID HILL,

Defendant, Appellee.

APPEAL FROM THE BANKRUPTCY
APPELLATE PANEL FOR THE FIRST CIRCUIT

Before

Torruella, Selya and Lipez,
<u>Circuit Judges</u>.

Michael B. Feinman, with whom Feinman Law Offices was on
brief, for appellant.
Isaac H. Peres for appellee.

April 1, 2009

**SELYA**, **Circuit Judge**.  This bankruptcy appeal concerns a matter of first impression at the circuit court level.  The pivotal question is this: May a debtor's homestead exemption be denied, under 11 U.S.C. § 522(g), with respect to residential property fraudulently transferred but voluntarily reconveyed pre-petition in response to efforts of a creditor?  The bankruptcy court answered this question affirmatively.  The bankruptcy appellate panel (the BAP) disagreed, holding that section 522(g) does not authorize a denial of the exemption in these circumstances.  In re Hill, 387 B.R. 339 (BAP 1st Cir. 2008).  We find the language of section 522(g) to be plain and unambiguous.  Consequently, we affirm.

At this stage of the proceedings, the material facts are not seriously disputed.  In 2000, the debtor, David Hill, personally guaranteed a $250,000 bank loan made to a corporation.  Subsequently, Stornaweye Financial Corporation became the holder in due course of both the promissory note evidencing the debt and the concomitant guaranty.

In May of 2004, the debtor and his wife, Tina R. Hill, sold their Connecticut residence and as tenants by the entirety purchased a home at 11 River Meadow Drive, West Newbury, Massachusetts (the Property).  They recorded the deed, which contained no homestead declaration,[1] on May 11.  The Hills paid

---

[1] Massachusetts law requires that "an estate of homestead in real property" be recorded either as part of the deed of conveyance or in a subsequent writing "duly signed, sealed and acknowledged

$1,000,000 for the Property, $450,000 of which was fronted by a mortgagee.

On August 26, 2004, the Hills transferred the Property to Mrs. Hill for $1.00. Five days later, Mrs. Hill recorded a declaration of homestead. On the same date, she and her husband refinanced the mortgage, slightly reducing their monthly installment payments.

The other shoe dropped on January 18, 2005: Stornawaye sued the Hills in a Massachusetts state court to collect the balance owed on the guaranteed indebtedness. It alleged, among other things, that the Property (which it sought to attach) had been fraudulently conveyed with the Hills' connivance. Mrs. Hill was served on January 31. She informed the debtor.

The suit galvanized the Hills into corrective action. Acting on the advice of counsel, Mrs. Hill re-transferred the Property to their joint names as tenants by the entirety. The deed, which restored the status quo ante, was dated February 2, 2005, and was recorded the next day. The debtor immediately recorded a declaration of homestead.

---

and recorded." Mass. Gen. Laws ch. 188, § 2. The rights emanating from a declaration of homestead are delineated in a separate subsection. See id. § 1. No Massachusetts homestead exemption may be claimed pursuant to 11 U.S.C. § 522(b)(3) unless a declaration has been duly filed and recorded in compliance with state law. See In re Garran, 338 F.3d 1, 4-5 (1st Cir. 2003).

On April 4, 2005, the debtor filed a straight bankruptcy petition under Chapter 7. See 11 U.S.C. §§ 701-727. He opted for the state exemption scheme and claimed a $500,000 homestead exemption referable to his interest in the Property. Stornawaye objected to the claimed exemption and initiated an adversary proceeding in the bankruptcy court. Amidst other requests for relief, its complaint sought to bar a discharge in bankruptcy. Upon the conclusion of trial, the bankruptcy court reserved decision.

On May 4, 2007, the court rendered a bench decision. First, it capped the debtor's potential homestead exemption at $125,000 on the ground that the Property had been acquired within the 1,215-day period preceding the filing of the bankruptcy petition. See 11 U.S.C. § 522(p). Second, it determined that even this reduced sum was unavailable; in its view, 11 U.S.C. § 522(g) precluded the debtor from taking any exemption because the Property had been voluntarily transferred and then reconveyed as a result of a creditor's efforts.

Third, the bankruptcy court sustained Stornawaye's objection to the granting of a discharge.[2] It reasoned that the transfer of the Property had been undertaken with the intent to hinder, delay, or defraud a creditor. See id. § 727(a)(2)(A). In

_____

[2] This appeal concerns only the dispute over the claimed homestead exemption. Details concerning Stornawaye's objection to a discharge are supplied only for context.

reaching this conclusion, the court rejected the Hills' explanation that they had deeded their home to Mrs. Hill in order to refinance it and obtain a superior interest rate. The court also offered two other grounds for denying a discharge, each of which involved the debtor's failure seasonably to disclose and turn over certain tax refunds. See id. §§ 727(a)(2)(A)-(B), 727(a)(4)(A).

On appeal to the BAP, the debtor assigned error to the denial of a discharge, the capping of his claimed homestead exemption, and the preclusion of that exemption. The BAP upheld the denial of the discharge based on the debtor's failure to turn over tax refunds in a timeous manner. In re Hill, 387 B.R. at 349-50. It did not pass upon the other grounds related to denying a discharge that the bankruptcy court had formulated.

As to the homestead exemption, the BAP ruled in favor of the debtor on both facets of the dispute. It held that the statutory cap did not apply in bankruptcy cases (like this one) that had been instituted prior to April 20, 2005. See id. at 348-49. With respect to the exemption itself, the BAP held that the plain language of section 522(g) limited its applicability to "property that the trustee recovers." Id. at 346 (emphasis supplied). Because the Property had been reconveyed as a result of an action by a creditor, not an action by a trustee, the statute did not pertain. Id. This further appeal ensued.

-5-

Congress has provided bankruptcy litigants with a two-track opportunity for intermediate review: they may appeal either to a district court or to a bankruptcy appellate panel. See 28 U.S.C. § 158. Regardless of which track an appellant selects, our task is the same: in either event, we concentrate on the bankruptcy court's decision, reviewing its findings of fact for clear error and its conclusions of law de novo. In re Healthco Int'l, Inc., 132 F.3d 104, 107 (1st Cir. 1997). Because this standard of review is identical to that employed by both of the intermediate appellate tribunals, we cede no special deference to the intermediate decision itself. Id.

In this venue, the debtor no longer pursues his claim of entitlement to a discharge. The sole remaining issue is whether he is entitled to the homestead exemption.[3] Stornawaye advances two reasons why he has no such right. We examine each reason in turn.

Stornawaye's most loudly bruited remonstrance involves the proper interpretation of section 522(g). Before turning to that remonstrance, we pause to rehearse some bedrock legal principles.

Statutory interpretation begins with the language of the statute. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1,

---

[3] Stornawaye does not contest that the exemption, if available at all, is capped at $500,000.

8 (1st Cir. 2007). We assume that the words Congress chose, if not specially defined, carry their plain and ordinary meaning. Boivin v. Black, 225 F.3d 36, 40 (1st Cir. 2000). If that meaning produces a plausible (though not inevitable) result, that is generally the end of the matter. Plumley v. S. Container, Inc., 303 F.3d 364, 369 (1st Cir. 2002). Of course, plain meaning sometimes must yield if its application would bring about results that are either absurd or antithetical to Congress's discernible intent. See Baez v. INS, 41 F.3d 19, 24 (1st Cir. 1994).

With this foundation in place, we turn to the text of section 522(g). The statute provides in pertinent part that, notwithstanding certain enumerated provisions of the Bankruptcy Code,

> the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if —
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and (B) the debtor did not conceal such property . . .

11 U.S.C. § 522(g). Stornawaye insists that this statute forbids the debtor's use of the exemption in the circumstances of this case and that, in all events, construing the statute to allow an

exemption here would contravene its core purpose. We test these hypotheses.

To begin, the plain language of section 522(g) is inhospitable to Stornawaye's linguistic argument. By its own terms, the statute applies only to "property that a trustee recovers." "Trustee" and "creditor" are separate nouns, with distinct meanings, and the Bankruptcy Code does not treat them as synonyms. Compare, e.g., 11 U.S.C. §§ 701-703 (establishing procedures for disinterested persons to serve as trustees), with, e.g., id. § 101(10) (defining "creditor").

The contrary authority on which Stornaweye relies is not persuasive. The centerpiece of its argument is the decision in In re Carpenter, 56 B.R. 704 (Bankr. D.R.I. 1986).[4] The Carpenter court held on similar facts that section 522(g) precludes a debtor from taking an exemption in property voluntarily transferred by him and later reconveyed pre-petition through the efforts of a creditor. Id. at 707. In support, the court cited only cases involving post-petition actions by creditor committees. Id. More importantly, Carpenter defied the plain meaning of section 522(g) even while recognizing that the text of the statute seemed to

---

[4] The bankruptcy court also mentioned In re Snyder, 108 B.R. 150 (Bankr. N.D. Ohio 1989). Snyder is of little utility. That decision merely states, in surveying the case law, that section 522(g) can apply to actions by creditors. See id. at 153-54. As the sole authority for this proposition, Snyder cites Carpenter. See id.

compel a different outcome.  Id.  We conclude, therefore, that Carpenter, which appears to have been incorrectly decided, furnishes no sustenance for Stornawaye's hypothesis.

In a different iteration of its linguistic argument, Stornawaye contends that the word "recovers" should be interpreted "passively," such that it would include a pre-petition reconveyance of property, so long as that reconveyance results in the property's inclusion in the later-established bankruptcy estate.  For this proposition, Stornawaye relies on several cases holding that when a trustee causes a debtor to retransfer property to the estate post-petition simply by filing or threatening to file an action, the trustee has recovered property within the purview of section 522(g).  See, e.g., In re Ringham, 294 B.R. 204, 208-09 (Bankr. D. Mass. 2003).  Stornawaye posits that the situation at hand represents a logical extension of these holdings.  We do not agree.

In the first place, giving force to Stornawaye's word play would eviscerate the meaning of "recovers."  To "recover" ordinarily means to "get or win back."  Webster's Third New Int'l Dict. 1898 (1993).[5]  Here, however, there was nothing to "get . . . back" — no loss to recoup: by the time that the bankruptcy estate

---

[5] In legal parlance, "recover" sometimes means "[t]o obtain by a judgment."  Black's Law Dict. 1302 (8th ed. 2004).  Even when used in this sense (a usage that we do not endorse in the present context), the word does not permit the reading that Stornawaye promotes.

-9-

came into existence, the Property had been reconveyed. Because there was never a loss to the estate, there could be no recovery.

There is, moreover, a second reason why this contention will not wash. Section 522(g), in terms, requires not just a recovery, but a recovery by the trustee, pursuant to powers delineated in particular sections of the Bankruptcy Code, namely, 11 U.S.C. §§ 510(c)(2), 542, 543, 550, 551, and 553. Stornawaye is a creditor, not a trustee; and in Chapter 7 cases these enumerated powers are conferred exclusively upon trustees, not upon creditors.[6] While a trustee may be thought to have used these powers to recover property when he merely threatens to employ them, a creditor who files a pre-petition suit under state law to annul a fraudulent conveyance cannot conceivably be thought to have availed himself of any of these powers. After all, the bankruptcy estate was not even in existence when the creditor sued.

The second branch of Stornawaye's statutory construction argument is based on the premise that section 522(g) is intended to be punitive and, therefore, construing it to allow the debtor an exemption notwithstanding his chicanery would be absurd and/or inconsistent with statutory purpose. But that premise for the argument is unproven.

---

[6] There is a limited set of circumstances, in Chapter 11 cases, in which a creditor may be given permission to exercise some of these powers. See In re STN Enters., 779 F.2d 901, 904 (2d Cir. 1985). That exception is not apposite here.

"In determining congressional intent, we employ the traditional tools of statutory construction, including a consideration of the language, structure, purpose, and history of the statute." McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 423 (1st Cir. 2007) (citation and internal quotation marks omitted). There is no legislative history that illuminates the purpose of section 522(g). See In re Glass, 60 F.3d 565, 569 n.4 (9th Cir. 1995). Thus, we are left with language, structure, and evident purpose.

The phrasing of the statute cuts against Stornawaye's theory. Section 522(g) is phrased permissively ("the debtor may exempt"). This is inconsistent with the claim that the statute is meant to be generally punitive (that is, designed to punish all dishonest debtors).

By the same token, the structure of the statute militates against Stornawaye's theory. Most of the operative language in section 522 is found in subsection (b), which authorizes a debtor to select either a federal exemption scheme (laid out in subsection (d)) or a hybrid state and federal exemption scheme (laid out in subsection (b)(3)). The fact that Congress allowed debtors to choose the more generous scheme belies the notion that it meant the statute to be generally punitive. See generally 4 Lawrence P. King et al., Collier on Bankruptcy ¶ 522.01 (15th ed. 2003) (noting that

section 522 is principally concerned with providing debtors with sufficient resources to effectuate a "fresh start").

Although section 522(g) recognizes that the trustee ordinarily recovers property for the benefit of the bankruptcy estate, it provides a further opportunity for a debtor to claim an exemption in property that was not in the debtor's portfolio when the bankruptcy proceeding began (so that the property was not subject to section 522(b)). This additional opportunity is available only for property involuntarily transferred away and not concealed by the debtor. See id. ¶ 523.12[1]. Seen in this light, it is at least arguable that, as the BAP stated, section 522(g) reflects a congressional desire to "prevent the situation in which a trustee incurs expenses, to be paid by the estate, to recover fraudulently conveyed property, only to have the debtor exempt it after the effort has been made." In re Hill, 387 B.R. at 348; cf. 11 U.S.C. § 522(k)(1) (making property exempted under section 522(g) liable for the aliquot share of costs and expenses incurred in avoiding the transfer). There is, therefore, no clear evidence that section 522(g) was sparked by Congress's intention to punish all dishonest debtors.

Stornawaye has a fallback position. It invites us to deny the debtor's claim of exemption under an alternative theory. We decline the invitation.

Stornawaye's alternative theory runs along the following lines. It observes, correctly, that the bankruptcy court denied the debtor a discharge because, among other things, the debtor had engaged in pre-petition conduct with the intent to hinder, delay, or defraud creditors. That finding, Stornawaye says, suggests that the court found each of the constituent conveyances (that is, the deed from the Hills to Mrs. Hill, the deed from Mrs. Hill back to the couple, and the debtor's declaration of homestead) to be fraudulent. Building on that platform, Stornawaye asserts that setting aside the whole series of fraudulent conveyances was an available remedy in the state court action — a remedy which, if effectuated, would have left the house in the Hills' joint names without any valid declaration of homestead.

This is wishful thinking: the debtor's forensic tapestry is woven of gossamer strands of speculation and surmise. In particular, Stornawaye's theory rests on an incorrect factual premise. The record makes manifest that the bankruptcy court's finding of fraudulent intent was predicated on its assessment of the initial transfer, which was designed to divest the debtor of his interest in the Property and place that interest beyond the reach of his creditors. The second transfer — the reconveyance — was curative, not fraudulent. The ensuing declaration of homestead was, therefore, unexceptionable.

We need go no further.  We hold that 11 U.S.C. § 522(g) does not authorize the bankruptcy court to deny a debtor's homestead exemption with respect to property that had been fraudulently transferred and then voluntarily reconveyed pre-petition, even though the retransfer came about through the efforts of a creditor.  Consequently, we uphold the BAP's decision reversing the bankruptcy court's contrary order.

**<u>Affirmed</u>**.