# United States Court of Appeals
## For the First Circuit

---

No. 12-9006

IN RE: BARBARA J. HANN,

Debtor.

---

BARBARA J. HANN,

Plaintiff, Appellee,

v.

EDUCATIONAL CREDIT MANAGEMENT CORPORATION,

Defendant, Appellant.

---

APPEAL FROM THE BANKRUPTCY
APPELLATE PANEL FOR THE FIRST CIRCUIT

---

Before

Torruella, Stahl, and Thompson,
Circuit Judges.

---

Adam C. Trampe, with whom Christopher J. Pyles and Sulloway &
Hollis, P.L.L.C. were on brief, for appellant.
Richard D. Gaudreau for appellee.

---

March 29, 2013

---

**STAHL, Circuit Judge**.  During appellee Barbara Hann's chapter 13 bankruptcy, appellant Educational Credit Management Corporation (ECMC) filed a proof of claim based on Hann's ostensibly unpaid student loans.  Hann, believing that her loans had been repaid, objected to the claim.  After a hearing at which ECMC failed to appear, the bankruptcy court entered an order sustaining Hann's objection and "allow[ing]" ECMC's claim "in the amount of $0.00."  When ECMC resumed collection efforts after the bankruptcy concluded, Hann reopened her case and filed an adversary complaint against ECMC, alleging that it had violated the order sustaining her objection.  The bankruptcy court ruled for Hann, concluding that the order had conclusively determined that Hann's debt was satisfied.  The court therefore sanctioned ECMC for attempting to collect on the debt.  The bankruptcy appellate panel affirmed.  ECMC appeals that ruling, arguing that the bankruptcy court never adjudicated the amount outstanding on Hann's student loans.  We disagree and therefore affirm.

## I.  Facts & Background

Like many law students, Hann financed her legal education partially through student loans.  Those loans included three federally insured Stafford Loans of $7,500 each ($22,500 in total), executed on May 10, 1990; April 30, 1991; and May 20, 1992, respectively.  The loans were originally issued by Society Bank and subsequently assigned to ECMC.  Hann contends that she eventually

repaid these loans in full, and says that, in the years leading up to her 2004 chapter 13 filing, she unsuccessfully tried to get various financial institutions (including ECMC itself) to acknowledge or verify that fact.

In November 2004, Hann filed her chapter 13 petition in the Bankruptcy Court for the District of New Hampshire. Three months later, ECMC filed an unsecured proof of claim in the amount of $54,756.44 ($31,187.62 in principal, $12,618.27 in interest, and $10,950.55 in collection costs). ECMC's proof of claim included copies of the three Stafford Loan promissory notes (which, as noted, totaled $22,500, not $31,187.62, in principal). Hann objected to ECMC's claim, contending that ECMC had failed to file adequate supporting documentation, that Hann had received conflicting information from ECMC about the outstanding loan amount, and that Hann's records showed "payments in excess of original loan amounts." She therefore asked the bankruptcy court to disallow the claim or, alternatively, to allow the claim "in the amount proven by appropriate payment records."

The bankruptcy court held a hearing on Hann's objection. ECMC neither appeared at the hearing nor responded to the objection. At the hearing, Hann testified at length about her payment history and her efforts to reconcile her own records with her lenders' records. The court then instructed Hann to supplement her testimony with an affidavit clearly outlining her loans and

payments, which she did. The affidavit stated Hann's belief that she had repaid the Stafford loans in full and described her dealings with ECMC and its predecessors, including the fact that in 1995, she received "correspondence from Society Bank indicating the Stafford notes had been paid." Hann submitted copies of that correspondence, which appeared to support her position.

After receiving Hann's materials, the bankruptcy court sustained Hann's objection by entering an order ("the Claim Order") that read: "Debtor's objection to Claim No. 1 filed by ECMC is sustained. This Court allows the claim of ECMC in the amount of $0.00." Per the common practice in the bankruptcy courts, the Claim Order had been drafted by Hann's counsel and submitted to the court as a proposed order. The Claim Order did not include any specific factual findings or legal conclusions. ECMC did not appeal or otherwise respond to the order.[1]

After Hann's chapter 13 case ended in 2010, ECMC resumed its efforts to collect on Hann's loans. In response, Hann's lawyer wrote to ECMC to assert, based on the Claim Order, that "ECMC has no further claim against" Hann. When ECMC refused to desist, Hann reopened her bankruptcy case and filed an adversary complaint against ECMC, seeking injunctive and declaratory relief barring

---

[1] ECMC points out that the bankruptcy court's records appear to show that it was not served with a copy of the Claim Order by mail, but it does not dispute that it had access to the order via the court's Case Management/Electronic Case Files system.

-4-

ECMC from continuing its collection efforts, a finding of contempt, actual and punitive damages, and fees and costs.

The parties cross-moved for summary judgment as to liability in September 2011. The bankruptcy judge who previously presided over the case having retired, the case was assigned to a new judge, who held a hearing on the parties' motions in October 2011. At the hearing, ECMC argued that, although the Claim Order had disallowed ECMC's claim against Hann's bankruptcy estate, it did not adjudicate the amount owing on her student loan debt or discharge that debt within the meaning of the Bankruptcy Code (because student loan debt is typically nondischargeable under 11 U.S.C. § 523(a)(8)). For her part, Hann contended that the Claim Order established that, as a factual matter, Hann had paid her debt in full prior to the bankruptcy, leaving nothing to discharge.

The bankruptcy court agreed with Hann, concluding that the Claim Order reflected the prior judge's determination that "the obligation [remaining] on [ECMC's] claim . . . was zero." The court also noted ECMC's repeated inability to identify or quantify an outstanding debt obligation. The court thus granted Hann's motion for summary judgment as to liability and denied ECMC's. Hann then waived her remaining claims and, at the court's direction, submitted an affidavit of fees and costs, to which ECMC objected. The court entered final judgment for Hann, ordering "that she owes nothing to the defendant" and "awarding [her] costs

and fees . . . as a remedial sanction for [ECMC's] violation of the Bankruptcy Code's discharge injunction."  See 11 U.S.C. § 524(a) (creating an automatic injunction against efforts intended to collect an already discharged debt).

ECMC appealed to the bankruptcy appellate panel (BAP), which affirmed.  Hann v. Educ. Credit Mgmt. Corp. (In re Hann), 476 B.R. 344 (B.A.P. 1st Cir. 2012).  The BAP said that the key issue was not whether the debt was dischargeable, but instead whether ECMC's claim was disallowed "on the grounds of pre-petition payment in full."  Id. at 356.  If so, discharge was irrelevant because "there is no need to except from discharge a debt which no longer exists."  Id. (citation and emphasis omitted).  Having framed the issue that way, the BAP ascribed "critical importance" to the fact that Hann had objected to ECMC's claim on the ground that she had already repaid the debt in full.  That fact, in combination with the bankruptcy court's "thorough review of the Claim Objection and the Claim," persuaded the BAP that "the bankruptcy court found that there was no obligation" remaining on the loans as of the petition date.  Id.  Accordingly, the BAP affirmed the award of sanctions, explaining that ECMC's continued collection activities in the face of the Claim Order "constituted an abuse of the bankruptcy process and defiance of the court's authority."  Id. at 360.  ECMC now appeals the BAP's decision.

## II.  Analysis

Two concepts feature prominently in the parties' arguments: claim allowance (or disallowance), which "deals exclusively with the rights of a creditor against assets of a debtor's bankruptcy estate"; and dischargeability, which "concerns whether a creditor may, after the entry of bankruptcy discharge, continue to pursue the enforcement of its debt as a personal liability against the debtor."  Gregory v. U.S. Dep't of Educ. (In re Gregory), 387 B.R. 182, 188 (Bankr. N.D. Ohio 2008).  Dischargeability, however, is not really at issue here.  ECMC says that the BAP mistook the disallowance of ECMC's claim for a discharge, and thus erroneously held "that an order disallowing a Chapter 13 claim necessarily discharges an underlying nondischargeable debt."  But the BAP said no such thing.  Rather, it concluded that the issue in this case "is not whether a nondischargeable debt can be discharged by virtue of its disallowance, but whether there is a debt at all where the claim has been disallowed on the grounds of pre-petition payment in full."  476 B.R. at 356 (emphasis added).[2]  And ECMC now agrees that a claim disallowance order can dissolve an underlying

---

[2]     The BAP did go on to say: "By definition, where there is no claim, there is no debt and nothing is discharged."  476 B.R. at 357.  In a vacuum, this sentence arguably could be read to suggest that disallowance is tantamount to discharge, but we think the context makes clear the BAP's meaning: that where a claim has been disallowed because the debt has already been repaid, "there is no claim, . . . no debt and nothing [to be] discharged."

nondischargeable debt if it is based on a factual finding that the debt has been repaid -- ECMC just disputes whether that actually happened in this case. Thus, the key question here is simply whether the Claim Order disallowed ECMC's claim on the ground that Hann had already repaid her loans (in which case dischargeability is beside the point). We consider that legal question de novo. See Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 68 (1st Cir. 2012); cf. Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 983 (1st Cir. 1995). We then address the issue of sanctions.[3]

## A.    The Claim Order

ECMC insists that the Claim Order did not determine that Hann had repaid her student loans, but merely ruled that ECMC could not collect anything from the bankruptcy estate -- that is, it disallowed the claim, and nothing more. As ECMC sees it, there is a crucial difference between a claim disallowance order saying "Hann owes nothing" or "ECMC is owed nothing" and one saying (as the Claim Order actually does) that ECMC's claim is "allowed in the

---

[3]    When we review a bankruptcy court decision, whether it reaches us via the BAP or a district court, we typically "concentrate on the bankruptcy court's decision." Stornawaye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29, 32 (1st Cir. 2009). But here, where the bankruptcy court did not issue a written opinion but the BAP did, we think it makes sense to focus on the BAP's analysis. Nevertheless, we afford "no special deference" to the BAP's decision. See id. Nor do we defer to the bankruptcy court's interpretation of the Claim Order, because it was issued by a different judge. See Monarch Life Ins., 65 F.3d at 983 & n.12; cf. Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel, 833 F.2d 1059, 1066-67 (1st Cir. 1987).

amount of $0.00."  The latter, ECMC says, "does not purport to adjudicate" the amount of the underlying debt.  Thus, ECMC contends that the Claim Order means only that its claim was disallowed, which should not prevent ECMC from pursuing an outstanding nondischargeable student loan debt.  ECMC also warns that requiring courts to interpret unelaborated claim disallowance orders like this one in order to determine whether they ruled that the underlying debt was satisfied would thrust those courts into a "subjective analytical quagmire."

Hann's response is the same as it was below: that she objected to ECMC's claim on the ground that she had paid off her loans, and then presented evidence to that effect, prompting the bankruptcy court to rule (albeit in oblique language) that she had indeed satisfied her debts.  In response to ECMC's argument about the pitfalls of deciphering an unexplained claim disallowance order, Hann posits that the task is fairly straightforward where, as here, the debtor provided the ordering judge with "substantial" -- and unrebutted -- evidence that the debt has been paid.[4]

---

[4]     Hann's proposed "substantial evidence" standard is drawn from our cases discussing the shifting burden of persuasion on a proof of claim.  See Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993) (a proof of claim is presumptively valid unless countered by an objection supported by substantial evidence, in which case the risk of nonpersuasion returns to the claimant).  Here, we do not rely on this standard because our task is to determine why the claim was disallowed, not whether it should have been.

At the outset, we can agree with ECMC that it is far better for bankruptcy courts that disallow claims on the ground that the underlying debt is satisfied to say so in clear language. We think this case would not be before us if the Claim Order simply said "ECMC's claim is disallowed because the underlying loans have been repaid." But the onus of avoiding ambiguity in these situations does not rest solely with bankruptcy judges. The Claim Order was submitted by Hann's counsel as a proposed order; had Hann's counsel proposed clearer language, this entire second proceeding most likely would have been unnecessary.

Nevertheless, we do not agree with ECMC that an inquiry into the reasoning behind the Claim Order is unworkable. We have said before that when a court order's "phraseology is imprecise, there may be some play in the joints. For example, a reviewing court can comb relevant parts of the record to discern the authoring court's intention." Negrón-Almeda v. Santiago, 528 F.3d 15, 23 (1st Cir. 2008); accord R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 12 (1st Cir. 2009); see Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 45 (1st Cir. 2006) (construing an unclear order in light of the "record of the proceedings below"). These cases dealt with orders that came to us on direct appeal, but there are also times when we look to the record in a prior proceeding, as when we must determine what issues were actually decided for preclusion purposes. E.g., Miller v.

-10-

<u>Nichols</u>, 586 F.3d 53, 61 (1st Cir. 2009); <u>Hoult</u> v. <u>Hoult</u>, 157 F.3d 29, 32 (1st Cir. 1998); <u>see</u> 18 Charles Alan Wright et al., <u>Federal Practice & Procedure: Jurisdiction</u> § 4420, at 520 (2d ed. 2002) (the first step in identifying issues decided in a prior case is a "painstaking examination of the record of the prior action"). To be sure, when the option is available, the wisest course will often be to "vacate the [ambiguous] order and return the case to the authoring court for clarification." <u>Subsalve USA</u>, 462 F.3d at 45. Here, though, we cannot take that route because the Claim Order was not appealed from, and clarification would be unavailable anyway because the ordering judge has retired. Indeed, that fact prevented the bankruptcy court itself from simply clarifying the Claim Order; had the ordering judge been available to preside over the adversary proceeding, he could have made the order's scope clear. Under these circumstances, we deem it appropriate to "comb relevant parts of the record to discern the authoring court's intention." <u>Negrón-Almeda</u>, 528 F.3d at 23.

Our scrutiny establishes that the Claim Order was indeed based on the conclusion that Hann had repaid her loans. This situation is not unlike one where we must determine whether a factual issue was a necessary component of an unexplained judgment or a general jury verdict in an earlier case. For example, in <u>Hoult</u>, we concluded, on the basis of the arguments made and the evidence presented, that the jury had necessarily decided a

-11-

particular question that was the "centerpiece," "the central and pivotal issue," in the initial trial. 157 F.3d at 32-33. Here, Hann's claim that she had repaid her loans in full had at least that status, given that it was her central -- if not sole -- argument against ECMC's claim.[5] And there is no dispute that the bankruptcy court had jurisdiction to determine that the debt underlying the claim had been repaid. See Langenkamp v. Culp, 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." (citation omitted)).

Hann explained, during her testimony and in her subsequent affidavit, that she "believe[d] the student loan claims were paid in full prior to the commencement of the Chapter 13 proceeding." She submitted materials appearing to support that belief. Her arguments and documentation went unrebutted. The bankruptcy court questioned Hann in person, reviewed her supplemental materials, and sustained her objection. As in Hoult, it may be "[t]heoretically" possible that the Claim Order is based on some conclusion other than pre-petition repayment, but it is not

---

[5]     ECMC observes that Hann's written objection to its claim says only that ECMC had "failed to file adequate documentation" supporting its claim, and that Hann's "records indicate payments in excess of original loan amounts"; it does not say that Hann had repaid her loans in full, with interest. But that was clearly her position at the hearing and in her subsequent submissions to the court.

"plausible."  Id. at 33.  Perhaps matters would be different if ECMC had disputed the issue, or simply appeared at the hearing to offer a basis for its claim.  But, given what actually happened during the claim objection process, it is clear that, as the BAP put it, "the bankruptcy court . . . in disallowing the Claim, necessarily determined that it had, in fact, been paid in full." 476 B.R. at 357.

The fact that Hann squarely raised the issue of whether she had repaid her loans distinguishes this case from State of Florida Department of Revenue v. Diaz (In re Diaz), 647 F.3d 1073 (11th Cir. 2011), on which ECMC relies.  In Diaz, the debtor objected to a proof of claim for unpaid child support on the basis that the documentation offered by the state in support of the claim showed (erroneously, it turned out) that the debt was roughly $20,000 less than the amount stated in the proof of claim itself. Id. at 1080.  The state did not respond to the objection, and so the bankruptcy court sustained it, allowing the claim in the lesser amount.  When the state later resumed its collection efforts, the bankruptcy court ruled that doing so violated the discharge injunction.  The Eleventh Circuit reversed, explaining that the debt was nondischargeable, id. at 1089-90, and that in any event "the amount of the debt . . . was never litigated during the underlying bankruptcy proceedings," because "the only issue before the bankruptcy court at the time of the claim objection was the

-13-

amount of the child-support debt that would be paid by the bankruptcy estate through Diaz's Chapter 13 plan, not the total amount of the child-support debt," id. at 1091. Here, although the ultimate issue in the claim objection hearing was the same as in Diaz (i.e., the amount the creditor would get from the estate), that issue was resolved by way of a subsidiary factual issue not raised in Diaz: whether the debt had already been repaid. Cf. Hoult, 157 F.3d at 32. Thus, Diaz addressed a different situation.[6]

## B.      The Sanctions

We turn, then, to the imposition of sanctions, which we review for abuse of discretion. Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 403 (1st Cir. 2002). In its final judgment, the bankruptcy court awarded Hann "costs and fees in the amount of $9,143.72 against [ECMC] as a remedial sanction for its violation of the Bankruptcy Code's discharge injunction." The BAP affirmed the sanctions on a different basis. It concluded that "ECMC's continued collection activities notwithstanding the court's determination that nothing was owed constituted an abuse of the bankruptcy process and defiance of the court's authority." 476 B.R. at 360. Thus, the BAP found that -- discharge injunction

---

[6]      Further, the BAP did not make the error made by the bankruptcy court in Diaz, which was to conclude that the nondischargeable debt at issue had been discharged by virtue of the claim objection process. 647 F.3d at 1090; see supra note 2 and accompanying text.

-14-

aside -- the sanctions were a proper exercise of the bankruptcy court's equitable powers under 11 U.S.C. § 105(a).  Id. at 359-60; see Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F.3d 34, 37 (1st Cir. 2008) (§ 105 gives bankruptcy courts authority to enforce Bankruptcy Code provisions and related court orders, and prevent abuses of the bankruptcy process); Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000) (noting that "§ 105 provides a bankruptcy court with statutory contempt powers," which "inherently include the ability to sanction a party").

ECMC raises two objections to the sanctions.  First, it says that the bankruptcy court did not comply with the usual requirement that a party be given notice and an opportunity to be heard before civil contempt sanctions are imposed.  See United States v. Winter, 70 F.3d 655, 661 (1st Cir. 1995).  We do not agree.  To begin with, since Hann's adversary complaint expressly sought sanctions pursuant to § 105 (or for violations of the automatic stay), ECMC cannot claim to have been unaware of the possibility of sanctions prior to the summary judgment hearing.  Then, at the hearing itself, the bankruptcy court gave ECMC fourteen days to object to Hann's forthcoming affidavit of fees and costs.  ECMC did object, raising arguments similar to those it presents here.  The bankruptcy court's final judgment makes clear that it considered and rejected those arguments.  Thus, ECMC was afforded the "minimal procedures" that are typically required

-15-

before civil contempt sanctions can be imposed, and no additional hearing was required.  See id.; cf. Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 246 (1st Cir. 2010) (the district court was within its discretion to sanction an attorney without holding a hearing, in part because he had the opportunity to brief the sanctions issue in his opposition to the other party's fee request); Muthig v. Brant Point Nantucket, Inc., 838 F.2d 600, 606-07 (1st Cir. 1988) (the briefing process provided an adequate opportunity to present evidence and argument on a Rule 11 motion), abrogated on other grounds by Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990).

Second, ECMC argues that, even if the Claim Order did rule that Hann's loans had been repaid (as we have now determined), ECMC cannot be sanctioned for doing something that was not clearly proscribed by the Claim Order's text.  This argument relies on the sound proposition that, for a party to be held in contempt for violating a court order, that order should be clear and unambiguous.  E.g., United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005).  But the BAP did not affirm the sanctions only because ECMC's actions contravened the Claim Order; it was ECMC's entire course of conduct that led the BAP to conclude that ECMC had abused the bankruptcy process.  And the BAP had good reason to think so.  ECMC filed a proof of claim against Hann, ignored the claim objection process, and then resumed its efforts to collect on the underlying debt without attempting to verify whether the debt

had survived the bankruptcy. ECMC also ignored an effort by Hann's counsel to explain that the claim order had settled the issue. Cf. In re Larson, 479 B.R. 355, 361 (Bankr. W.D. Pa. 2012) (creditor abused the bankruptcy process by ignoring the existence of a reaffirmation agreement and then, upon being told of it, refusing to comply with its terms). At the very least, ECMC -- having sat out the claim objection process -- could have sought a clarification from the court after Hann's counsel asserted that the Claim Order had indeed extinguished the debt. See Infusaid Corp. v. Intermedics Infusaid, Inc., 756 F.2d 1, 2 (1st Cir. 1985) (a party "in doubt about the lawfulness of a proposed course of action . . . can ask the [ordering] court for guidance").

Under these circumstances, it is no answer for ECMC to say that it relied in good faith on cases like Diaz. Unlike Diaz, this case involved a factual dispute over whether the underlying debt still existed -- which ECMC would have realized if it had sought to learn what happened at the hearing on its own claim. Thus, even if ECMC's conduct did not violate the discharge injunction, see Diaz, 647 F.3d at 1090-91, it was an abuse of the bankruptcy process. We therefore affirm the bankruptcy court's imposition of sanctions, albeit on different grounds. See Spenlinhauer v. O'Donnell, 261 F.3d 113, 117 (1st Cir. 2001).

### III. Conclusion

An unadorned order disallowing a claim based on a nondischargeable debt should not generally carry with it lurking post-bankruptcy consequences for the creditor. And there will certainly be cases where the record will not justify a determination that the bankruptcy court ruled that the debt was paid. Here, however, we think the record of the claim objection process and ECMC's conduct is sufficiently clear. Consequently, the judgment of the bankruptcy appellate panel is <u>affirmed</u>.