CLAY, Circuit Judge, dissenting. First, I want to note several points of agreement with the majority opinion. I agree with the majority’s conclusion that Cox’s second personal-injury action should be dismissed because the filing exceeded the 30-day grace period afforded to him under 11 U.S.C. § 108(c)(2). Further, I agree that the district court erred by failing to recognize that separate from Easley v. Pettibone Mich. Corp., 990 F.2d 905 (6th Cir. 1993), a bankruptcy court may annul an automatic stay under its equitable authority pursuant to 11 U.S.C. § 362(d). And finally, I agree with the majority that the bankruptcy court order in the instant case is ambiguous. However, I do not agree that the appropriate remedy is remand to the district court in order to “glean the intent of the parties.” Remand would accomplish little more than the needless prolongation of this litigation and all but ensures a future appeal on the same issue currently before the Court. I therefore respectfully dissent. Pursuant to 11 U.S.C. § 362(a), an automatic stay protects the debtor from civil actions affecting its assets during the duration of the bankruptcy proceeding. Neither party disputes that at the time Cox filed his first lawsuit, the automatic stay was in effect. Prior to this Court’s decision in Easley, there was an understanding that actions taken in violation of the automatic stay were void, even if the creditor had no notice of the stay. See, e.g., In re Smith, 876 F.2d 524, 526 (6th Cir. 1989). In Easley, the Court clarified that lawsuits filed while the defendant was under the protection of the automatic stay were “voidable instead of void.” 990 F.2d at 910. Following this holding, this Court operates under the understanding that the mere filing of a lawsuit in contravention of an automatic stay is, by itself, not self-actualizing. Instead, a debtor must “file a motion to dismiss on the grounds that the action violates section 362(a),” id,., and have a court declare that the lawsuit is void. In so doing, Easley instructed that there are two equitable circumstances which negate the protection of an automatic stay: (1) where a debtor attempts to exploit the stay to gain an unfair advantage; or (2) fraudulent and willful delays in asserting the stay as a defense. Id. at 911. Neither applies in the present case. At no point, however, did Easley — nor could it — disturb the separate authority entrusted to bankruptcy judges to exercise their equitable discretion to independently lift, annul, or revise an automatic stay. See Roseman v. Roseman, 14 F.3d 602 (6th Cir. 1993) (“We held that a bankruptcy court could set aside a stay retroactively on equitable groundsBankruptcy courts are independently empowered under 11 U.S.C. § 362(d) with discretion allowing them to annul an automatic stay. Such discretion enables bankruptcy judges to permit the order to “operate retroactively[,]” thereby “validat[ing] actions taken by a party at a time when the party was unaware of the stay.” 3-362 Collier on Bankruptcy ¶ 362.07 (16th ed. 2017). Therefore, a bankruptcy court’s equitable decision annulling a stay can have the effect of retroactively validating a lawsuit, which was filed after an automatic stay was in place, and thereby allowing it to proceed. See Baxter v. Sarmadi, 602 Fed.Appx. 322, 325 (6th Cir. 2015) (citing Easley, 990 F.2d at 909-910). But while the bankruptcy court maintains the power to annul the automatic stay, and therefore, sanction Cox’s first lawsuit, it does not follow that the bankruptcy court’s order in the instant case had that effect. Title 11 U.S.C. § 362(d)(1) cautions that a bankruptcy court may only annul the automatic stay “for cause.” “Neither the statute nor the legislative history defines the term ‘for cause’ and ... [offers only] very general guidance.” In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990). Courts find “cause” to be limited when the requested remedy involves the maintenance of a post-petition lawsuit, even if the filing party was unaware that the automatic stay was in effect. See, e.g., In re Bazzi, 481 B.R. 397, 402 (Bankr. E.D. Mich. 2012). In the Third Circuit, the jurisdiction in which Cox sought annulment of a stay, violations of an automatic stay, although void, may nevertheless “be reinvigorated through a retroactive annulment of the stay.” In re Myers, 491 F.3d 120, 127 (3d Cir, 2007). Decisions to “reinvigorate” a lawsuit are “committed to the bankruptcy court’s discretion, and may be reversed only for abuse of that discretion.” Id. These decisions are made carefully by “examining the totality of the circumstances” and are “fact intensive and generally offer no precise standards.” In re Brown, 311 B.R. 409, 412 (E.D. Pa. 2004). Still, bankruptcy courts must render factual findings and legal conclusions to support their decision to lift an automatic stay. In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999). A principal purpose for this requirement is to facilitate appellate review by informing the court of the basis for the bankruptcy court’s decision. See, e.g., Kelley v. Everglades Drainage District, 319 U.S. 415, 422, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943). Quite plainly, the bankruptcy court’s order is deficient. It fails to articulate factual findings or make legal conclusions. However, the order is not before us on direct review, and so such deficiency is not controlling in the instant case. Instead, our task is to interpret, as the majority acknowledges, the ambiguous order before us. The majority declines to undertake this task for the first time on appeal and proposes to remand to the district court. But it is unclear why this is the case. To be sure, “when the option is available, the wisest course of action will be to ‘vacate the [ambiguous] order and return the case to the authoring court for clarification.’” In re Hann, 711 F.3d 235, 240 (1st Cir. 2013) (quoting Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 45 (1st Cir. 2006)). In the instant case, such an option is unavailable to this Court because the bankruptcy court which issued the indefinite order sits outside our jurisdiction. So “[w]hen the [previous court’s] order is unil-luminating, the appellate court must fend for itself.” Camilo-Robles v. Hoyos, 151 F.3d 1, 8 (1st Cir. 1998). Accordingly, the appropriate thing to do is to “comb relevant parts of the record to discern the authoring court’s intention.” In re Hann, 711 F.3d at 240 (quoting Negrón-Almeda v. Santiago, 528 F.3d 15, 23 (1st Cir. 2008)); see also In re Tomlin, 105 F.3d 933, 940 (4th Cir. 1997) (“When an order is ambiguous, a court must construe its meaning, and in so doing may resort to the record upon which the judgment was based.”) (internal quotation omitted and emphasis added.) The district court cannot offer any insight that this Court cannot independently glean from the language before us and the evidence in the record. Therefore, under the circumstances, “mechanically” remanding to the district court is ill-advised. Subsalve, 462 F.3d at 45 (“An appellate tribunal, however, should not mechanically resort to this remedy [of remand] when doing so would accomplish nothing more than the undue prolongation of the litigation.”). Before discussing the meaning of the order before us, it might be helpful to address the majority’s erroneous primary justification for remand. The majority states that remand is necessary because “the parties drafted the order in question, so determining its purpose also involves using the tools of contract interpretation to glean the intent of the parties, as with a consent decree.” But consent decrees operate in a markedly different fashion than judicial orders — including the one presently in question. As the Supreme Court observed in United States v. Armour & Co., 402 U.S. 673, 681, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971): Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. Id. Consent decrees are distinct from judicial orders precisely because the “voluntary nature of a consent decree is its most, fundamental characteristic.” Local No. 93, Int’l Ass’n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 521-22, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). In fact; the Supreme Court has explicitly rejected the argument that a consent decree should be treated as an order. Id. at 523, 106 S.Ct. 3063 (“Finally, we reject the argument that a consent decree should be treated as an ‘order’ .... ”). So while there may be good reason to look to the parties’ intent when evaluating the scope of a consent decree— consent decrees operate through the acquiescence of the parties and involve a waiver of rights — no such reason exists for interpreting a bankruptcy court order. Even though the parties may have conspired to draft the court order in question, which for purposes of expediency parties involved in litigation occasionally do, it does not follow that the order is enforceable only through the volition of the parties as would be the case in the event of a consent decree. Rather, the sole consideration for this Court when evaluating an ambiguous order is the issuing judge’s intent. See Tootle v. Sec’y of Navy, 446 F.3d 167, 172-73 (D.C. Cir. 2006). Ample information exists from which we can discern the bankruptcy judge’s intent. We start first with the language of the order. The order read that the “automatic stay is vacated to permit the Movant to resume and prosecute to conclusion the civil action .identified specifically as: Coy G. Cox Jr. v. Specialty Vehicle Solutions, LLC, Civil Action No.: 15-CI-00040, Commonwealth of Kentucky, Letcher Circuit Court.” (R. 10-6, Order, PagelD # 120-21). As the majority points out, this language does not clearly grant retroactive relief since it fails to use the words “retroactive” or “annulled.” Nor is there any evidence in the record that this was in fact the bankruptcy court’s intention. Rather, the record quite clearly indicates that the opposite is true. Cox’s petition for relief to the bankruptcy court requested the continuation of a pre-petition rather than a post-petition law suit. Cox never used the words “annul” or “vacate” in his filing to clearly explain that the reason he desired to lift the automatic stay was to continue his post-petition lawsuit. In the course of negotiations amongst the parties over the language of the bankruptcy court order, it is not apparent from the record whether SVS’ bankruptcy counsel was aware such relief was requested. The bankruptcy court’s treatment of the matter supports SVS’s contention that the bankruptcy judge never intended the allowance of a lawsuit filed after the automatic stay was in place. The court did not schedule oral arguments in the case. It did not make findings of fact or legal conclusions. Nothing was said, contrary to the case law in the Third Circuit, concerning the “cause” for lifting the automatic stay. If SVS had appealed the order, it surely would have been overturned. See In re Mazzeo, 167 F.3d at 142 (a bankruptcy court must set forth findings and conclusions that must “be sufficient to permit meaningful appellate review” because review for abuse of discretion “does not mean unreviewable,”). The totality of these circumstances indicates that the bankruptcy judge’s intention was not to allow Cox’s post-petition lawsuit — described by the majority as Cox I— to proceed in contravention of the automatic stay. Importantly, there is an additional justification for rejecting Cox’s interpretation of the bankruptcy court order. Courts have repeatedly stated that the automatic stay is “one of the fundamental debtor protections provided by the bankruptcy laws.” Midlantic Nat. Bank v. New Jersey Dep’t of Envtl. Prot., 474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (internal citations and quotation omitted). The stay arises at the commencement of a bankruptcy case and is designed to give a debt- or a “breathing spell” from her creditors. Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 423 (6th Cir. 2000). Accordingly, relief from an automatic stay — especially retroactive relief — is by definition extraordinary. And in these circumstances where a petitioner requests such relief, it is appropriate to interpret any ambiguity against Cox. After all, Cox bears the burden of convincing a bankruptcy court that sufficient “cause” exists justifying the annulment of the automatic stay. Cf. In re Engel, 124 F.3d 567, 576-77 (3d Cir. 1997) (finding that when the burden is on the petitioner to show the bankruptcy court order entitled him to payment from estate funds contrary to the standard practice, the ambiguity of an order counted against him). Cox has not met this burden in the instant case. For the reasons articulated above, I would affirm the decision of the district court on grounds separate from those stated by the district court. I would hold that the bankruptcy court’s order did not annul the automatic stay so as to afford Cox the ability to proceed with his initially filed lawsuit. And because the majority unnecessarily and ill-advisedly remands the matter back to the district court, I respectfully dissent.