NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0629n.06

Nos. 16-5289/5290

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

COY G. COX, JR.,

      Plaintiff-Appellant,

v.

SPECIALTY VEHICLE SOLUTIONS, LLC,

      Defendant-Appellee,

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

---

**BEFORE: GUY, CLAY, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff Coy G. Cox, Jr. filed two successive personal-injury actions against Specialty Vehicle Solutions, LLC ("SVS"), which was in bankruptcy proceedings at the time. The district court dismissed the first suit as invalidly filed in violation of the bankruptcy automatic stay, and dismissed the second suit—filed after the bankruptcy court granted relief from the stay—as untimely under the applicable Kentucky statute of limitations. Because the district court considered only one of two possible grounds for validating an action taken in violation of the automatic stay, we **VACATE** the dismissal of Cox's first suit and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the dismissal of Cox's second suit.

### I. FACTS

Cox was a police officer assigned to an IRS task force. On February 28, 2014, Cox was conducting surveillance in a specially modified van sold to the IRS by SVS. Cox alleges that a

battery powering the van's electronic equipment was negligently installed and released toxic liquid and gaseous chemicals into the van, causing him unspecified severe and permanent injuries.

On March 5, 2014, Cox's attorney wrote to SVS, stating that Cox intended to assert a claim against SVS related to the February 28 incident. On September 26, 2014, Cox's attorney and SVS employees inspected the van. There is no contemporaneous documentation of the results of the inspection in the record. But a March 9, 2015, email from SVS's president (sent after receiving notice of Cox's lawsuit), states that the batteries were intact at the time of the inspection.

## II.  PROCEDURAL HISTORY

### A.  Litigation in the Kentucky State Court and the Bankruptcy Court

On October 20, 2014, SVS filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey (No. 14-31329-CMG). SVS did not list Cox among its creditors and did not serve Cox with notice of the petition. Cox asserts this was done in violation of the Bankruptcy Code and in an attempt to conceal the bankruptcy from Cox. SVS responds that it did not list Cox as a creditor because it thought Cox had dropped his claim against SVS after the inspection revealed no problems with the van's batteries.

Unaware of SVS's bankruptcy, Cox sued SVS in Kentucky state court on February 23, 2015, asserting strict liability, negligence, and fraud claims. This was five days before Kentucky's one-year statute of limitations for personal-injury actions would have run. Ky. Rev. Stat. § 413.140(1)(a). SVS filed a notice of the automatic bankruptcy stay on March 18. *See* 11 U.S.C. § 362(a). On June 2, Cox sought relief from the stay from the bankruptcy court.

Cox's submission stated that Cox sought to "institute or resume" the Kentucky suit, and incorrectly described the Kentucky suit as "a pre-petition action." SVS objected.

Cox and SVS engaged in discussions regarding possible relief from the stay. These discussions resulted in Cox submitting an agreed order to the bankruptcy court. At SVS's request, the word "institute" was removed from the proposed order, so that Cox was granted permission only to "resume" the Kentucky suit. The bankruptcy court entered the parties' agreed order on August 7, 2015. The order states in relevant part:

> it is ORDERED that the automatic stay is vacated to permit [Cox] to resume and prosecute to conclusion the civil action identified specifically as:
>
> > Coy G. Cox, Jr. v. Specialty Vehicle Solutions, LLC,
> > Civil Action No.: 15-CI-00040, Commonwealth of Kentucky,
> > Letcher Circuit Court
>
> only to permit [Cox] to seek to liquidate the claims for recovery made against [SVS] . . . provided . . . that [Cox] shall limit any claim for recovery . . . to the extent of any available and applicable insurance coverage.

(*Cox I*, R. 10-5, PID 71.)

SVS asserts that it agreed to the order because it understood the Kentucky suit to have been filed prior to its bankruptcy petition, and that Cox's June 2 submission "was a false statement relied upon by all involved in the bankruptcy proceeding." (Appellee's Br. at 4 (citing *Cox I*, R. 34-1, PID 328–29 (affidavit of SVS's bankruptcy attorney).) Cox asserts that the June 2 submission merely contained a "scrivener's error," and points out that SVS had actual knowledge of when both the bankruptcy petition and the Kentucky suit were filed. Cox further asserts that it must have been obvious to the bankruptcy court that, because the Kentucky case number begins with "15," it was filed in 2015, and therefore after SVS's October 2014 bankruptcy petition.

### B. Litigation in the District Court

SVS filed a notice of the lifting of the stay in state court on August 13, 2015 and removed the Kentucky state-court action to the United States District Court for the Eastern District of Kentucky on August 24, 2015, where it was docketed as No. 7:15-cv-00080-ART-HAI ("*Cox I*"). SVS then filed a motion to dismiss. Relying on *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905 (6th Cir. 1993), SVS argued that *Cox I* was "null and void" because it was filed in violation of the bankruptcy stay. SVS also argued that the one-year statute of limitations had run because Cox did not refile his action within the thirty days allowed by 11 U.S.C. § 108(c) as a grace period after the lifting of the stay.[1] Finally, SVS argued that the circumstances did not justify allowing Cox to proceed with his suit on equitable grounds.

Cox responded by filing a new action against SVS in the Eastern District of Kentucky on September 11, 2015, docketed as No. 7:15-cv-00090-ART-HAI ("*Cox II*"), repeating essentially the same claims and adding allegations regarding the procedural history of *Cox I*.

Next, on September 23, 2015, Cox filed his brief opposing SVS's motion to dismiss *Cox I*. Cox argued that "[i]t is clear from all context and the Bankruptcy Court's language that" the bankruptcy court was aware that his suit against SVS was filed after SVS's bankruptcy petition, and that the bankruptcy court "intended to and did annul the automatic stay," thus retroactively validating his otherwise improperly filed suit. (*Cox I*, R. 14, PID 96.) Cox also argued that the thirty-day grace period provided by § 108(c)(2) began to run on August 13, 2015, when SVS filed its notice in state court that the stay had been lifted, not on August 7, when the

---

[1] In relevant part, the statute provides: "if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until . . . 30 days after notice of the termination or expiration of the stay . . . ." 11 U.S.C. § 108(c), (c)(2).

bankruptcy court issued its order. Thus, according to Cox, the complaint in *Cox II*, filed on September 11, was timely. Cox did not argue that there were equitable grounds to retroactively validate *Cox I*.

On October 1, 2015, SVS filed a motion to dismiss *Cox II* on the ground that the applicable statute of limitations had run, relying again on *Easley* and 11 U.S.C. § 108(c)(2). Cox did not respond to SVS's motion.

On November 18, 2015, the district court ruled on both motions to dismiss. The district court dismissed *Cox I* on the ground that *Easley*'s equitable exception did not apply, and the suit was therefore void as a matter of law because it was filed in violation of the automatic stay. The district court dismissed *Cox II*, reasoning that Cox had actual notice of the bankruptcy court's August 7, 2015 order on the day it was issued, and so had thirty days from that date to refile.

Cox responded to these rulings by filing identical motions to alter or amend the judgment pursuant to Rule 59(e) in both *Cox I* and *Cox II*. Cox made two arguments relevant to this appeal: (1) the bankruptcy court's order retroactively validated *Cox I*; and (2) judicial estoppel bars SVS from asserting that *Cox I* was void or that Cox was required to refile, rather than continue, his suit against SVS. The district court declined to consider the first argument on the ground that it had already been raised and rejected, and the second because Cox could and should have raised it in response to SVS's motions to dismiss. These appeals followed.

## C.       Further Proceedings in the Bankruptcy Court and Litigation in this Court

After filing his appeals, Cox returned to the bankruptcy court, asking that court to reopen the bankruptcy proceedings and clarify its order lifting the automatic stay. After a hearing, the bankruptcy court declined to do so.

Nevertheless, on June 14, 2016, Cox filed a motion in this court asking us to take judicial notice of the transcript of the bankruptcy court hearing and seeking leave to supplement the appellate record by including the hearing transcript and two affidavits submitted to the bankruptcy court in connection with that hearing. We denied Cox's motion, stating that the bankruptcy judge's comments about the August 7, 2015 order contained in the transcript were equivocal, and rejected Cox's attempt to use the transcript as a substitute for a clarifying order. We also held that the bankruptcy judge's comments during the hearing are not adjudicative facts of which judicial notice can properly be taken. *See* Fed. R. Evid. 201(b). Finally, we declined to allow Cox to add the two affidavits to the appellate record.

### III. DISCUSSION

### A. Standard of Review

SVS did not specify which procedural rule it was relying on in bringing its motions to dismiss in either *Cox I* or *Cox II*. The district court appears to have construed both motions as based on Rule 12(b)(6). This was appropriate in *Cox II*. In *Cox I*, however, SVS had already answered the complaint, so the motion to dismiss should have been considered a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 12(c); *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). This is inconsequential, however, because "the same standards apply" under both Rule 12(b)(6) and Rule 12(c)—our court reviews the district court's decision de novo, construing the complaint in the light most favorable to Cox and accepting all of Cox's factual allegations as true. *Lindsay*, 498 F.3d at 438.[2]

---

[2] The district court was permitted to rely on documents taken from the state court's and bankruptcy court's dockets without converting the motions to dismiss into motions for summary judgment pursuant to Rule 12(d). *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

"In this circuit, a district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551–52 (6th Cir. 2012) (citation omitted). Our court "review[s] the denial of a Rule 59(e) motion for abuse of discretion, which occurs when a district court relies on clearly erroneous findings of fact or when it improperly applies the law." *Id.* (citation omitted).

## B. Judicial Estoppel

As a preliminary matter, Cox contends that SVS is judicially estopped from arguing for the dismissal of his lawsuits because SVS "took the position in bankruptcy court that Cox would be permitted to resume his claim." (Appellant's Br. at 25.) Cox raised this argument for the first time in his Rule 59(e) motion. The district court rejected the argument because it "could, and should, have been made before judgment issued." (*Cox I*, R. 36, PID 336 (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010)).) On appeal, Cox makes no response to this point, and we find nothing in the record that suggests the district court abused its discretion in refusing to consider Cox's tardy judicial estoppel argument.

## C. *Cox I*

With certain exceptions not relevant here, "[a]n entity's act of filing a petition for bankruptcy operates as a 'stay' of actions that could have been filed against the entity to recover claims." *In re Glob. Technovations Inc.*, 694 F.3d 705, 711 (6th Cir. 2012) (citing 11 U.S.C. § 362(a)). This "fundamental protection," *Easley*, 990 F.2d at 910, gives debtors a "breathing spell" to reorganize their financial affairs, *In re Robinson*, 764 F.3d 554, 559 (6th Cir. 2014) (citation and internal quotation marks omitted). Thus, "an action taken against a debtor during

the duration of the automatic stay" is "invalid"—it is "without legal force or effect." *Easley*, 990 F.2d at 909.

In *Easley*, however, we explained that an action taken in violation of an automatic stay may be validated in either of two ways. First, a bankruptcy court may exercise its unique statutory power to "grant relief from the stay . . . such as by terminating, *annulling*, modifying, or conditioning such stay." 11 U.S.C. § 362(d) (emphasis added); *Easley*, 990 F.2d at 909–10. "This power to annul permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay." *Easley*, 990 F.2d at 910 (citation and internal quotation marks omitted). Second, an "exception to the operation of the stay" applies if "limited equitable circumstances" exist—specifically, if "the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense," or if "the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result." *Id.* at 910–11.

In dismissing *Cox I*, the district court found the equitable exception inapplicable (Cox did not dispute this point), and cited *Easley* for the proposition that "[b]ecause the equitable exception does not apply, [*Cox I*] is void as a matter of law." (R. 25, PID 166; *see also* R. 36, PID 336 n.3 (denying Cox's Rule 59 motion and citing *Easley* for the proposition that "a lawsuit that violates the automatic stay is void absent limited equitable circumstances").) This was error. As explained above, *Easley* offers two paths for validating an action taken in violation of the automatic stay. In *Easley*, the bankruptcy court declined to grant any form of relief from the stay, so the absence of equitable circumstances justifying relief was determinative. 990 F.2d at 907. Here, however, the bankruptcy court did grant relief from the stay. The district court thus

erred in dismissing *Cox I* without addressing whether that stay relief was intended to be retroactive, or merely prospective.[3]

The interpretation of a court order is a question of law. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). Here, the order is ambiguous, because its operative language—"the automatic stay is vacated to permit [Cox] to resume and prosecute to conclusion" his Kentucky state-court suit—implies that the automatic stay will no longer be a barrier to Cox's claims, and uses the word "vacate[]," rather than "terminate," suggesting that the stay order might have been nullified, *see Vacate*, BLACK'S LAW DICTIONARY (10th ed. 2014); however, the order does not expressly grant retroactive relief by using the words "retroactive" or "annulled." "[T]he meaning of an ambiguous judgment or order must be determined by what preceded it and what it was intended to execute." *United States v. Booth*, 551 F.3d 535, 538–39 (6th Cir. 2009) (quoting *Hendrie v. Lowmaster*, 152 F.2d 83, 85 (6th Cir. 1945)). Typically, "the most important factor in determining the meaning is the intention of the judge who entered the order," *In re Zevitz*, 230 F.3d 1361 (6th Cir. 2000) (table), determined by considering the order "together with the language of the motion that it granted," *Booth*, 551 F.3d at 538. Here, however, the *parties* drafted the order in question, so determining its purpose also involves gleaning their intent, as with a consent decree. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975); *Dotson v. U.S. Dep't of Hous. & Urban Dev.*, 731 F.2d 313, 318 (6th Cir. 1984).

The dissent takes issue with this analysis, and relies on *Tootle v. Secretary of the Navy*, 446 F.3d 167, 172–73 (D.C. Cir. 2006), for the proposition that "the sole consideration for this

---

[3] In denying Cox's Rule 59(e) motion, the district court repeated its misapplication of *Easley*, again concluding that the equitable exception is the only basis for validating an action taken in violation of the automatic stay.

Court when evaluating an ambiguous order is the issuing judge's intent." (Dis. Op. at 18.) But *Tootle* does not involve an ambiguous order; nor was the order the product of the parties' agreement. 446 F.3d at 173. And, even focusing exclusively on the issuing judge's intent, that intent cannot be divorced from the parties' intent when the parties have prepared an agreed order; a judge's intent in entering such an order is likely related to the intent of the agreeing parties. In this circuit, "the meaning of an ambiguous judgment or order must be determined by what preceded it and what it was intended to execute." *Booth*, 551 F.3d at 538 (brackets, quotation marks, and citation omitted). Thus, the context of the order and the parties' intent in agreeing to it are relevant.

Even on this limited record, it appears that what the bankruptcy court intended to do was grant stay relief to Cox on terms acceptable to SVS, specifically, by limiting Cox's recovery to the available and applicable insurance coverage. This effectively obviated the need for a bankruptcy stay because it eliminated SVS's responsibility for any judgment. In other words, it appears that the court adopted and intended to execute the parties' intent, which was effectuated by the agreed order. Thus, although the dissent is clearly correct that a consent decree and an order are two different things, (*see* Dis. Op. at 17–18), the tools of contract interpretation used to interpret consent decrees are relevant here because of the particular nature of this order.

We decline to attempt to ascertain what the agreed order was intended to execute for the first time on appeal. As they did below, the parties rely on evidentiary materials, such as communications between counsel and an affidavit from SVS's bankruptcy counsel. In light of its focus on only one aspect of *Easley*, the district court did not address the intent or effect of the agreed order or the supporting materials, and did not decide whether to convert the motion to

dismiss to one considered under Rule 56, which would have required giving both sides an opportunity to present pertinent evidence. *See* Fed. R. Civ. P. 12(d).

For these reasons, we vacate the dismissal in *Cox I*, and remand to the district court for further proceedings consistent with this opinion.

### D. *Cox II*

While the validity of *Cox I* remains an open question, we see no reason to delay the resolution of *Cox II*.[4] Cox alleges his injuries occurred on February 28, 2014. Under Kentucky law, "[a]n action for an injury to the person of the plaintiff" "shall be commenced within one (1) year after the cause of action accrued." Ky. Rev. Stat. § 413.140(1), (1)(a). "Kentucky law is clear that, absent a latent injury, the statute of limitations begins to run on the date the injury is inflicted . . . ." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 322 (6th Cir. 2010) (citing *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972)). Cox does not contend he suffered a latent injury, so looking only at Kentucky law, the statute of limitations ran on February 27, 2015, and *Cox II*, filed on September 11, 2015 was untimely.

However, under federal law, because the automatic stay prevented Cox from filing his second action against SVS, and the statute of limitations ran while the stay was in effect, Cox was permitted to file his otherwise-stale claim within "30 days after notice of the termination or expiration of the stay." 11 U.S.C. § 108(c)(2); *Easley*, 990 F.2d at 912. Relief from the stay was granted on August 7, 2015, and *Cox II* was filed on September 11—35 days later. Cox argues, however, that the 30-day extension began to run on August 13, when SVS notified the state court that the stay had been lifted. If so, *Cox II*—filed exactly 30 days later—was timely.

---

[4] Whether the bankruptcy court's order retroactively validated *Cox I* is irrelevant to the disposition of *Cox II*.

As the district court correctly pointed out, however, "Cox's argument misunderstands what counts as notice under 11 U.S.C. § 108(c)(2)." (*Cox I*, R. 25, PID 167.) The statute extends the period to file a claim for "30 days after notice of the termination or expiration of the stay," 11 U.S.C. § 108(c)(2), *not* for "30 days after notice of the termination or expiration of the stay *is filed in the nonbankruptcy proceeding*." The statute applies equally to "commencing or continuing a civil action . . . against the debtor." 11 U.S.C. § 108(c). If the 30-day grace period only begins to run when notice of the lifting of the stay is filed in a nonbankruptcy court, it would be impossible to trigger the 30-day clock if the creditor had not yet filed a lawsuit. Thus, the plain language of the statute supports the district court's interpretation—the 30-day grace period began to run when Cox received actual notice that the stay had been lifted. *See Easley*, 990 F.2d at 912 n.6 ("Although this 30-day period is rather short, parties usually know in advance, as they did here, of the date the stay will be lifted and the need to act."); *Simon v. Navon*, 116 F.3d 1, 4–5 (1st Cir. 1997) ("the creditor is permitted an additional 30 days after notice of the event by which the stay is terminated") (quoting H.R. Rep. No. 95–595, at 318 (1977)); 2-108 Collier on Bankruptcy ¶ 108.04 (16th ed.) ("It is important to note that this extension continues not simply until 30 days after the termination of the stay, but until 30 days after notice of that termination. When a party has no such notice, the 30 days never begin to run.").

The district court found that Cox must have had actual notice that the stay was lifted on August 7, 2015, because "as the party that filed the motion to lift the stay, Cox, through counsel, received electronic notice of the [bankruptcy court]'s decision on that same day." (*Cox I*, R. 25, PID 168.) Cox does not dispute this. We therefore agree with the district court that § 108(c)'s

30-day grace period began to run on August 7, 2015, and *Cox II*, filed on September 11, was untimely.[5]

### V.  CONCLUSION

For the foregoing reasons, we **VACATE** the judgment in *Cox I* and **REMAND** for further proceedings consistent with this opinion.  We **AFFIRM** the judgment in *Cox II*.

---

[5] Cox's attempt to rely on Federal Rule of Bankruptcy Procedure 9006(e) was not raised below and is in any case misplaced.  That rule provides:  "Service of process and service of any paper other than process or of notice by mail is complete on mailing."  Fed. R. Bankr. P. 9006(e). Here, the notice relied on by the district court was provided electronically.

**CLAY, Circuit Judge, dissenting.** First, I want to note several points of agreement with the majority opinion. I agree with the majority's conclusion that Cox's second personal-injury action should be dismissed because the filing exceeded the 30-day grace period afforded to him under 11 U.S.C. § 108(c)(2). Further, I agree that the district court erred by failing to recognize that separate from *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905 (6th Cir. 1993), a bankruptcy court may annul an automatic stay under its equitable authority pursuant to 11 U.S.C. § 362(d). And finally, I agree with the majority that the bankruptcy court order in the instant case is ambiguous. However, I do not agree that the appropriate remedy is remand to the district court in order to "glean the intent of the parties." Remand would accomplish little more than the needless prolongation of this litigation and all but ensures a future appeal on the same issue currently before the Court. I therefore respectfully dissent.

Pursuant to 11 U.S.C. § 362(a), an automatic stay protects the debtor from civil actions affecting its assets during the duration of the bankruptcy proceeding. Neither party disputes that at the time Cox filed his first lawsuit, the automatic stay was in effect. Prior to this Court's decision in *Easley*, there was an understanding that actions taken in violation of the automatic stay were void, even if the creditor had no notice of the stay. *See*, *e.g.*, *In re Smith*, 876 F.2d 524, 526 (6th Cir. 1989). In *Easley*, the Court clarified that lawsuits filed while the defendant was under the protection of the automatic stay were "voidable instead of void." 990 F.2d at 910. Following this holding, this Court operates under the understanding that the mere filing of a lawsuit in contravention of an automatic stay is, by itself, not self-actualizing. Instead, a debtor must "file a motion to dismiss on the grounds that the action violates section 362(a)," *id.*, and have a court declare that the lawsuit is void. In so doing, *Easley* instructed that there are two equitable circumstances which negate the protection of an automatic stay: (1) where a debtor

attempts to exploit the stay to gain an unfair advantage; or (2) fraudulent and willful delays in asserting the stay as a defense. *Id.* at 911. Neither applies in the present case.

At no point, however, did *Easley*—nor could it—disturb the separate authority entrusted to bankruptcy judges to exercise their equitable discretion to independently lift, annul, or revise an automatic stay. *See Roseman v. Roseman*, 14 F.3d 602 (6th Cir. 1993) ("We held that a bankruptcy court could set aside a stay retroactively on equitable grounds."). Bankruptcy courts are independently empowered under 11 U.S.C. § 362(d) with discretion allowing them to annul an automatic stay. Such discretion enables bankruptcy judges to permit the order to "operate retroactively[,]" thereby "validat[ing] actions taken by a party at a time when the party was unaware of the stay." 3-362 Collier on Bankruptcy ¶ 362.07 (16th ed. 2017). Therefore, a bankruptcy court's equitable decision annulling a stay can have the effect of retroactively validating a lawsuit, which was filed after an automatic stay was in place, and thereby allowing it to proceed. *See Baxter v. Sarmadi*, 602 F. App'x 322, 325 (6th Cir. 2015) (citing *Easley*, 990 F.2d at 909–910).

But while the bankruptcy court maintains the power to annul the automatic stay, and therefore, sanction Cox's first lawsuit, it does not follow that the bankruptcy court's order in the instant case had that effect. Title 11 U.S.C. § 362(d)(1) cautions that a bankruptcy court may only annul the automatic stay "for cause." "Neither the statute nor the legislative history defines the term 'for cause' and . . . [offers only] very general guidance." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Courts find "cause" to be limited when the requested remedy involves the maintenance of a post-petition lawsuit, even if the filing party was unaware that the automatic stay was in effect. *See*, *e.g.*, *In re Bazzi*, 481 B.R. 397, 402 (Bankr. E.D. Mich. 2012). In the Third Circuit, the jurisdiction in which Cox sought annulment of a stay,

violations of an automatic stay, although void, may nevertheless "be reinvigorated through a retroactive annulment of the stay." *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007). Decisions to "reinvigorate" a lawsuit are "committed to the bankruptcy court's discretion, and may be reversed only for abuse of that discretion." *Id.* These decisions are made carefully by "examining the totality of the circumstances" and are "fact intensive and generally offer no precise standards." *In re Brown*, 311 B.R. 409, 412 (E.D. Pa. 2004). Still, bankruptcy courts must render factual findings and legal conclusions to support their decision to lift an automatic stay. *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). A principal purpose for this requirement is to facilitate appellate review by informing the court of the basis for the bankruptcy court's decision. *See*, *e.g.*, *Kelley v. Everglades Drainage District*, 319 U.S. 415, 422 (1943).

Quite plainly, the bankruptcy court's order is deficient. It fails to articulate factual findings or make legal conclusions. However, the order is not before us on direct review, and so such deficiency is not controlling in the instant case. Instead, our task is to interpret, as the majority acknowledges, the ambiguous order before us. The majority declines to undertake this task for the first time on appeal and proposes to remand to the district court. But it is unclear why this is the case. To be sure, "when the option is available, the wisest course of action will be to 'vacate the [ambiguous] order and return the case to the authoring court for clarification.'" *In re Hann*, 711 F.3d 235, 240 (1st Cir. 2013) (quoting *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 45 (1st Cir. 2006)). In the instant case, such an option is unavailable to this Court because the bankruptcy court which issued the indefinite order sits outside our jurisdiction. So "[w]hen the [previous court's] order is unilluminating, the appellate court must fend for itself." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998). Accordingly, the appropriate thing to do is to "comb relevant parts of the record to discern the authoring court's intention."

*In re Hann*, 711 F.3d at 240 (quoting *Negrón-Almeda v. Santiago*, 528 F.3d 15, 23 (1st Cir. 2008)); *see also In re Tomlin*, 105 F.3d 933, 940 (4th Cir. 1997) ("When an order is ambiguous, a court *must* construe its meaning, and in so doing may resort to the record upon which the judgment was based.") (internal quotation omitted and emphasis added.) The district court cannot offer any insight that this Court cannot independently glean from the language before us and the evidence in the record. Therefore, under the circumstances, "mechanically" remanding to the district court is ill-advised. *Subsalve*, 462 F.3d at 45 ("An appellate tribunal, however, should not mechanically resort to this remedy [of remand] when doing so would accomplish nothing more than the undue prolongation of the litigation.").

Before discussing the meaning of the order before us, it might be helpful to address the majority's erroneous primary justification for remand. The majority states that remand is necessary because "the *parties* drafted the order in question, so determining its purpose also involves using the tools of contract interpretation to glean the intent of the parties, as with a consent decree." But consent decrees operate in a markedly different fashion than judicial orders—including the one presently in question. As the Supreme Court observed in *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971):

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

*Id.* Consent decrees are distinct from judicial orders precisely because the "voluntary nature of a consent decree is its most fundamental characteristic." *Local No. 93, Int'l Ass'n of Firefighters,*

*AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 521–22 (1986). In fact, the Supreme Court has explicitly rejected the argument that a consent decree should be treated as an order. *Id.* at 523 ("Finally, we reject the argument that a consent decree should be treated as an 'order' . . . ."). So while there may be good reason to look to the parties' intent when evaluating the scope of a consent decree—consent decrees operate through the acquiescence of the parties and involve a waiver of rights—no such reason exists for interpreting a bankruptcy court order. Even though the parties may have conspired to draft the court order in question, which for purposes of expediency parties involved in litigation occasionally do, it does not follow that the order is enforceable only through the volition of the parties as would be the case in the event of a consent decree. Rather, the sole consideration for this Court when evaluating an ambiguous order is the issuing judge's intent. *See Tootle v. Sec'y of Navy*, 446 F.3d 167, 172–73 (D.C. Cir. 2006).

Ample information exists from which we can discern the bankruptcy judge's intent. We start first with the language of the order. The order read that the "automatic stay is vacated to permit the Movant to resume and prosecute to conclusion the civil action identified specifically as: Coy G. Cox Jr. v. Specialty Vehicle Solutions, LLC, Civil Action No.: 15-CI-00040, Commonwealth of Kentucky, Letcher Circuit Court." (R. 10-5, Order, PageID # 120–21). As the majority points out, this language does not clearly grant retroactive relief since it fails to use the words "retroactive" or "annulled." Nor is there any evidence in the record that this was in fact the bankruptcy court's intention. Rather, the record quite clearly indicates that the opposite is true. Cox's petition for relief to the bankruptcy court requested the continuation of a pre-petition rather than a post-petition law suit. Cox never used the words "annul" or "vacate" in his filing to clearly explain that the reason he desired to lift the automatic stay was to continue his post-petition lawsuit. In the course of negotiations amongst the parties over the language of the

bankruptcy court order, it is not apparent from the record whether SVS' bankruptcy counsel was aware such relief was requested. The bankruptcy court's treatment of the matter supports SVS's contention that the bankruptcy judge never intended the allowance of a lawsuit filed after the automatic stay was in place. The court did not schedule oral arguments in the case. It did not make findings of fact or legal conclusions. Nothing was said, contrary to the case law in the Third Circuit, concerning the "cause" for lifting the automatic stay. If SVS had appealed the order, it surely would have been overturned. *See In re Mazzeo*, 167 F.3d at 142 (a bankruptcy court must set forth findings and conclusions that must "be sufficient to permit meaningful appellate review" because review for abuse of discretion "does not mean unreviewable."). The totality of these circumstances indicates that the bankruptcy judge's intention was not to allow Cox's post-petition lawsuit—described by the majority as *Cox I*—to proceed in contravention of the automatic stay.

Importantly, there is an additional justification for rejecting Cox's interpretation of the bankruptcy court order. Courts have repeatedly stated that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (internal citations and quotation omitted). The stay arises at the commencement of a bankruptcy case and is designed to give a debtor a "breathing spell" from her creditors. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000). Accordingly, relief from an automatic stay—especially retroactive relief—is by definition extraordinary. And in these circumstances where a petitioner requests such relief, it is appropriate to interpret any ambiguity against Cox. After all, Cox bears the burden of convincing a bankruptcy court that sufficient "cause" exists justifying the annulment of the automatic stay. *Cf. In re Engel*, 124 F.3d 567, 576–77 (3d Cir. 1997) (finding that when the

burden is on the petitioner to show the bankruptcy court order entitled him to payment from estate funds contrary to the standard practice, the ambiguity of an order counted against him). Cox has not met this burden in the instant case.

For the reasons articulated above, I would affirm the decision of the district court on grounds separate from those stated by the district court. I would hold that the bankruptcy court's order did not annul the automatic stay so as to afford Cox the ability to proceed with his initially filed lawsuit. And because the majority unnecessarily and ill-advisedly remands the matter back to the district court, I respectfully dissent.