NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0189n.06

No. 20-5036

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 09, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| COY G. COX, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| SPECIALTY VEHICLE SOLUTIONS LLC, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GUY, CLAY, and WHITE, Circuit Judges.

The court issued a lead opinion joined by GUY, J. CLAY, J. (pg. 13), delivered a separate opinion concurring in the judgment. WHITE, J. (pp. 14–15), delivered a separate dissenting opinion.

Plaintiff-Appellant Coy G. Cox, Jr. filed two successive personal-injury actions against Specialty Vehicle Solutions LLC (SVS), which was in bankruptcy proceedings at the time the first action was filed. The district court dismissed the first suit as invalidly filed in violation of the automatic bankruptcy stay and dismissed the second suit—filed more than thirty days after the bankruptcy court granted relief from the stay—as untimely under the applicable Kentucky statute of limitations. Cox appealed and we affirmed in part and reversed and remanded in part for the district court to consider whether the stay relief granted by the bankruptcy court was intended to apply retroactively to the first suit or be prospective only. The district court once again dismissed the case, finding that the stay relief was intended to be prospective only. We AFFIRM.

**I.**

A detailed account of the factual and procedural history of this case can be found in this panel's prior opinion. *See Cox v. Specialty Vehicle Sols., LLC*, 715 F. App'x 443 (6th Cir. 2017). Thus, we include only an abbreviated summary as relevant to the issues currently on appeal.

Cox was a police officer assigned to an IRS task force. On February 28, 2014, Cox was conducting surveillance in a specially modified van sold to the IRS by SVS. Cox alleges that a battery powering the van's electronic equipment was negligently installed and released toxic liquid and gaseous chemicals into the van, causing him severe and permanent injuries.

On March 5, 2014, Cox's attorney wrote to SVS, stating that Cox intended to assert a claim against SVS related to the February 28 incident. On September 26, 2014, Cox's attorney and SVS employees inspected the van.[1]

On October 20, 2014, SVS filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey (No. 14-31329-CMG) without listing Cox as a creditor. Unaware of SVS's bankruptcy, Cox sued SVS in Kentucky state court on February 23, 2015, asserting strict liability, negligence, and fraud claims. SVS filed a notice of the automatic bankruptcy stay on March 18. Cox's personal-injury attorneys hired Warren Levy, a New Jersey bankruptcy attorney, to attempt to obtain relief from the bankruptcy stay. Levy filed a motion for stay relief on Cox's behalf, requesting that the court issue an order modifying the stay "so as to enable the [c]reditor to obtain [r]elief." *Cox I*, R. 15-1, PID 126. The proposed order attached to the application requested permission to "institute or resume and prosecute" the Kentucky suit. *Id.* at PID 136. Cox's notice of motion for stay relief, which is a required part of a motion under Rule

---

[1] There is no contemporaneous documentation of the results of the inspection in the record, but a March 9, 2015 email from SVS's president (sent after receiving notice of Cox's lawsuit) states that the batteries were intact at the time of the inspection.

9013-1 of the District of New Jersey's Local Bankruptcy Rules, *see* D.N.J. LBR 9013-1(a), incorrectly described the Kentucky suit as a "pre-petition action." *Cox I*, R. 15-1, PID 123, 136. SVS's bankruptcy attorney, Jennifer McEntee, objected to the motion, but indicated that "an amicable resolution could possibly be reached if [Cox] agreed to limit the relief requested in [his] proposed order to the extent of the insurance policy." *Cox I*, R. 47, PID 377–78. Levy forwarded the objection to Cox's personal-injury attorneys, who passed the message along to Cox. Levi James Daly, one of Cox's personal-injury attorneys, confirmed that Cox was willing to limit his recovery to the extent of SVS's insurance coverage, and notified Levy of Cox's consent to limit his recovery in that manner.

Levy and McEntee engaged in discussions regarding relief from the stay. McEntee conditioned her consent to the stay language that Levy submitted with his motion on the removal of the term "institute," thus allowing Cox only to "resume and prosecute" the state civil suit identified in the proposed order.

The bankruptcy court entered the parties' agreed order on August 7, 2015. The order states in relevant part:

> it is ORDERED that the automatic stay is vacated to permit [Cox] to resume and prosecute to conclusion the civil action identified specifically as:
>
>> Coy G. Cox, Jr. v. Specialty Vehicle Solutions, LLC,
>> Civil Action No.: 15-CI-00040, Commonwealth of Kentucky,
>> Letcher Circuit Court
>
> only to permit [Cox] to seek to liquidate the claims for recovery made against [SVS] . . . provided . . . that [Cox] shall limit any claim for recovery . . . to the extent of any available and applicable insurance coverage.

*Cox I*, R. 10-5, PID 71.

SVS filed a notice of the lifting of the stay in state court on August 13, 2015, and removed the Kentucky state-court action to the United States District Court for the Eastern District of

Kentucky ("*Cox I*"). SVS then filed a motion to dismiss arguing that notwithstanding the bankruptcy order lifting the stay, the suit was "null and void" because it was filed in violation of the bankruptcy stay. *Cox I*, R. 10, PID 48. Cox then filed a new action against SVS in the Eastern District of Kentucky on September 11, 2015 ("*Cox II*"), repeating essentially the same claims. SVS filed a motion to dismiss *Cox II* on the ground that the applicable statute of limitations had run.

The district court dismissed *Cox I* on the ground that the equitable exception in *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir. 1993), did not apply, and the suit was therefore void as a matter of law because it was filed in violation of the automatic stay; the district court dismissed *Cox II*, reasoning that Cox had actual notice of the bankruptcy court's August 7, 2015 order on the day it was issued and failed to file the complaint within the thirty days allowed. After filing his claims of appeal, Cox returned to the bankruptcy court asking that court to clarify its order lifting the automatic stay, but the bankruptcy court declined to do so. On appeal, this court affirmed the district court's dismissal of *Cox II*. *See Cox*, 715 F. App'x at 449–50. As to *Cox I*, we determined that the district court had erred by failing to consider the second aspect of *Easley*— whether the bankruptcy court had exercised its statutory power to "grant relief from the stay . . . by . . . annulling such stay." *Id.* at 447–48 (quoting 11 U.S.C. § 362(d)). This court held that the district court should have considered whether the bankruptcy court's order vacating the stay was intended to be retroactive—thus validating the otherwise void complaint—or prospective only. *Id.* We acknowledged that the interpretation of a court order is a question of law, but found that the bankruptcy court's order (negotiated by the parties) was ambiguous as to its intended retroactive or prospective effect, and thus remanded for the district court to determine, in the first instance, the context of the order and the parties' intent in drafting it. *See id.* at 448–49.

On remand, after limited discovery, the district court considered the evidence produced by the parties, converting the original motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The district court found that there was no evidence that the parties negotiating the agreed order intended to retroactively validate Cox's state civil suit against SVS and granted summary judgment to SVS on that basis.

As an initial matter, the district court rejected Cox's argument that the plain meaning of the stay-relief order, specifically its use of the word "resume," required a finding that the order was meant to apply retroactively. The district court noted that this court already considered the plain meaning of the order and found it ambiguous, and thus concluded that consideration of the language of the order itself should not weigh in favor of either party's interpretation. The district court also rejected Cox's argument that ambiguity in the agreed stay order should be construed against SVS as the drafter. The court declined to apply this rule of construction because it found that the parties had equal bargaining power and that the agreed order was the product of negotiations.

The district court considered the limited evidence submitted by both parties, specifically affidavits from Cox and the parties' attorneys—Levy excluded—regarding their intent in negotiating and ratifying the agreed stay order. Cox and his personal-injury attorneys, James Ryan Turner and Daly, submitted affidavits stating their belief that the intent behind the agreed order was to annul the stay and allow Cox to retroactively reinstate his civil suit against SVS. SVS submitted an affidavit from its personal-injury attorney Maines, in which she claims that she was unaware that Cox had sought relief from the stay in bankruptcy court, and that had she been aware, she would have brought the mistaken assertion that the suit was pre-petition to the lawyers' and the bankruptcy court's attention. SVS also submitted an affidavit from its bankruptcy attorney

McEntee stating that due to the language in Cox's motion for stay relief, she believed that the state civil suit was a pre-petition action; that she removed the term "institute" from the proposed order based on that belief; and that at no point in drafting or agreeing to the order did she contemplate that it would apply retroactively to validate a post-petition action.

Ultimately, the district court decided that it would only rely on evidence concerning the intent of the parties who actually negotiated and drafted the order—Levy and McEntee—rather than the intent of Cox and SVS, and their personal-injury attorneys, who were at most indirectly involved. The court determined that "[f]rom the affidavits, it appears the agreed order was negotiated on mistaken beliefs or oversights." R. 54, PID 549.[2] Because there was no affidavit or other testimony from Levy, the court could not determine whether his designation of the state civil suit as a pre-petition action was due to a "scrivener's error" or a mistaken understanding. *Id.* But the district court noted that there was unrefuted testimonial evidence, in the form of affidavits from SVS's personal-injury attorney and McEntee, that McEntee was not informed and did not discover on her own that Cox's suit was filed after the bankruptcy stay was in effect. And McEntee stated that she negotiated under the assumption that the suit was filed pre-petition, and thus that a prospective stay would allow the action to resume.

Taking the language of Levy's notice of motion for stay relief along with McEntee's affidavit, the district court concluded that the bankruptcy attorneys were both under the mistaken impression that Cox's civil suit was filed before SVS's bankruptcy petition, and thus that the parties negotiating the agreed stay order did not intend for Cox's suit to be retroactively reinstated. Based on that finding, the district court granted summary judgment in favor of SVS. The district court denied Cox's subsequent motion to alter or amend the judgment. *Cox v. Specialty Vehicle*

---

[2] The remainder of the record citations refer to the record in *Cox I*.

*Sols., LLC*, No. 7:15-80-KKC-HAI, 2019 WL 6873866, at *6 (E.D. Ky. Dec. 17, 2019). This appeal followed.

## II.

We review a district court's grant of summary judgment de novo. *Med. Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007)).

The sole task to be undertaken by the district court on remand was to ascertain what the agreed order was intended to execute, taking into account the order itself, the context, and the intent of the parties. "Where a contractual provision . . . is deemed ambiguous . . . the court may look to extrinsic evidence—'additional evidence that reflects the intent of the contracting parties'—to help construe it." *In re AmTrust Fin. Corp.*, 694 F.3d 741, 750 (6th Cir. 2012) (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994)). The district court determined that the intent of the parties, as manifested through the bankruptcy lawyers, was to permit a pre-petition case to resume, and not to retroactively validate a post-petition action.

Cox presents several grounds on which he believes the district court erred: (1) by failing to begin with the language of the order before considering extrinsic evidence, (2) by refusing to construe ambiguities in the agreed stay order against SVS as the drafter, (3) "by relying exclusively on the alleged intent of the bankruptcy attorneys while ignoring the intent of the *parties*, and by drawing all inferences in favor of SVS," and (4) "by using the wrong standard of proof in finding

that the plain terms of the agreed order should be discounted because they were procured through misrepresentation." Appellant's Br. at 13–14. We address each argument in turn.

Cox's argument that the district court erred by "failing to ascribe the plain meaning to the terms of the consent order" is without merit. In Cox's prior appeal, we held that the terms of the agreed order were ambiguous regarding the dispositive question whether it was intended to retroactively validate the post-petition personal-injury action, and that resolving that ambiguity required consideration of the intent of the parties in negotiating the order. *Cox*, 715 F. App'x at 448–49. Cox insists that the plain language of the order resolves this case, and that at the very least, at summary judgment, the district court was required to make all inferences in his favor and was thus required to infer that the inclusion of the word "resume" could be interpreted to mean that the order was retroactively applicable. Appellant's Br. at 14–19. But if that were the case, there would have been no reason for this court to remand the case for inquiry into the intent of the negotiating parties. To be sure, the actual language of the order is not rendered irrelevant simply because it is ambiguous regarding its retroactivity. Any asserted intended meaning that cannot be reconciled with the language of the order and the circumstances of its entry would be impermissible. But the district court's interpretation here looked at the language together with all the circumstances.

The district court also did not err by declining to apply the rule of *contra proferentem*— that an agreement should be construed against the drafter—to construe ambiguities in the agreed stay order against SVS. This court remanded for the district court to determine whether the order was intended to retroactively validate the post-petition action based on the intent of the negotiating parties. "Unlike contract rules that help to interpret the meaning of a term, and thereby uncover the intent of the parties, *contra proferentem* is by definition triggered only after a court determines

that it *cannot* discern the intent of the parties." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019). Here, the district court determined that the rule was inapplicable because the agreed order was the product of negotiations between equal parties. We also note that the district court ultimately determined that it was able to discern the parties' intent. We find no error.

Cox next argues that the district court erred by "relying exclusively on the alleged intent of the bankruptcy attorneys while fully ignoring the intent of the *parties.*" Appellant's Br. at 19. According to Cox, the district court should have considered what Cox believed he was agreeing to when he consented to the terms of the agreed order, rather than the intent of the attorneys who negotiated it. *Id.* at 19–22. Cox asserts in his affidavit that he would not have "agreed to include the word 'resume' in the order if, by 'resume and prosecute to conclusion[,]' what it really meant was 'void the civil action identified.'" R. 49, PID 490. There is little question that it would have made no sense for Cox to agree to an order for relief from the stay that did not encompass the action he had brought, and the district court does not appear to have questioned Cox's intent. The problem with Cox's position is that although SVS and McEntee also believed that the agreed order would grant the relief Cox sought, they believed the order properly allowed a pre-petition suit to move forward, not a post-petition suit.

Cox is correct that the meaning of an ambiguous contract is determined by the intent of the parties. But when a party to an agreement authorizes an attorney to negotiate on his behalf and consents to the terms negotiated by his attorney, but the attorney fails to effectuate the party's intent by making representations that are inconsistent with that intent, the party is bound by the attorney's representations. *Cf. Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 524 (6th Cir. 2006) (explaining that "clients must 'be held accountable for the acts and omissions of their chosen counsel'") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396–

97 (1993)). Attorneys attempting to resolve a dispute on behalf of their client must be able to depend on the good-faith representations of opposing counsel. This is particularly true given that in most states, it is considered an ethical violation for an attorney to directly negotiate with an opposing party who is represented by counsel. *See* Model Rules of Prof'l Conduct R. 4.2.

Here, there is little evidence regarding Levy's understanding of the agreement. Because Levy did not submit an affidavit, the only direct evidence we have of his intent in negotiating the agreed order is the language of the notice of motion for stay relief Levy submitted to the bankruptcy court, the application, and the order. The notice characterized the state-court suit as a pre-petition action. As the district court acknowledged, it is entirely possible that this was a typographical error, rather than a misunderstanding of the nature of the case. But neither Cox nor any of his attorneys corrected the mischaracterization. And, ultimately, the purpose of the agreed stay-relief order was to grant the relief Cox sought in the motion on terms acceptable to SVS. Whether intentional or not, the relief sought in the motion was a stay to resume a pre-petition suit, not a stay to retroactively validate an otherwise void post-petition suit.

Further, the district court did not err in deciding the issue on a motion for summary judgment. Cox presented no evidence to dispute the fact that McEntee, acting on behalf of SVS, believed that the stay relief was prospective in nature based on the representation in the notice of motion that the action was pre-petition. Cox's affidavit merely presented his own, albeit reasonable, assumptions regarding the meaning of the agreement, which were never directly communicated to SVS, SVS's counsel, or, apparently, even Levy.

Ultimately, an agreement is supposed to represent a meeting of the minds. *McGeorge v. White*, 174 S.W.2d 532, 533 (Ky. 1943) ("To consummate a binding contract[,] . . . there must be a meeting of the minds of the parties or mutual assent to the same thing, and all material terms and

conditions of the contract, including a certainty of the subject matter, must be agreed on."). Taking the evidence in the light most favorable to Cox, there is a dispute whether there was ever a meeting of the minds to validate a post-petition suit, and thus, ever a valid agreement, but the district court did not clearly err in finding that SVS and its attorney did not intend that the order grant retrospective relief. In other words, there are two possibilities based on the evidence presented: either Levy and McEntee came to an agreement, on behalf of their clients, to grant prospective relief on the mutual misunderstanding that the action to be resumed was filed pre-petition, or there was no meeting of the minds as to the meaning of the terms of the agreement.

If this were a simple issue of contract interpretation, rather than interpretation of the bankruptcy court's agreed order, whether there was a meeting of the minds as to the terms of the contract would arguably be a trial issue unsuitable for summary judgment. But because this is an order of the bankruptcy court, and because Cox has not obtained relief from the order, simply treating the order as a nullity is not an option available to this court or the district court. In any event, that course would not change the outcome; if the agreed order were rescinded, Cox's suit would be dismissed just the same. The only way Cox's pre-petition suit remains viable is if the order vacating the stay was intended to be retroactive. Because the district court reasonably found that SVS and McEntee did not intend to enter such an order, and that the order contemplated the pursuit of a pre-petition suit, the district court did not err in granting summary judgment in favor of SVS.

Cox's final argument is that the district court employed the wrong standard of proof in determining that the agreement was procured by misrepresentation. Appellant's Br. at 22–23. But the district court did not grant summary judgment based on a finding that the terms of the

agreement were unenforceable due to fraud or misrepresentation; it merely found that there was no evidence to support Cox's interpretation of the agreement.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

**CLAY, Circuit Judge, concurring in the judgment.** This case comes before us once again to address the same question that the Court declined to take up the first time around: did the bankruptcy court's order allow Cox to proceed with a lawsuit that he filed after SVS filed for Chapter 11 bankruptcy.[1] I agree with the district court's finding that the bankruptcy court's order did not annul the automatic stay, and, therefore, Cox cannot proceed with his initial lawsuit. *See Cox v. Specialty Vehicle Solutions, LLC*, 715 F. App'x 443, 454 (6th Cir. 2017) (Clay, J., dissenting). However, I continue to disagree with the majority's assertion that the district court needed to look to the parties' intent to determine the effect of the bankruptcy court's ambiguous order. The effect of that order can be determined by the language of the order, the parties' filings that were before the bankruptcy judge, and underlying principles of bankruptcy law. *See id.* at 453–54. Cox's petition for relief to the bankruptcy court shows that he "requested the continuation of a pre-petition rather than a post-petition law suit." *Id.* at 453. Accordingly, the filings in the bankruptcy litigation show that "the bankruptcy judge never intended the allowance of a lawsuit filed after the automatic stay was in place." *Id.* Because the district court ultimately came to this conclusion (after an unnecessary detour), I respectfully concur in the judgment to affirm the district court's order granting SVS's motion for summary judgment.

---

[1] I agree with the majority opinion's recitation of the relevant facts and procedural history and will not restate them here.

**HELENE N. WHITE, Circuit Judge, dissenting.** This is a most unfortunate outcome. As Cox argues, SVS would not be harmed by applying the stay relief retroactively because any recovery has been limited to the applicable insurance.

In our first opinion, we declined to interpret the agreed order entered by the bankruptcy court in the first instance because the district court had dismissed *Cox I* without considering the meaning of the order. We determined that the order was ambiguous because, on the one hand, it used the terms "vacate" and "resume," but, on the other, it did not use the statutory term "annulling," or otherwise state that it was intended to apply retroactively. We concluded that it would be unfair to interpret the order ourselves without giving the parties an opportunity to present evidence in support of their intent and understanding of the language of the order.

It is unfortunate that on remand Levy did not provide evidence of his own understanding and purpose in using the chosen words. And it is also unfortunate that the parties did not delve further into the asserted understanding and intent of the lawyers in using the chosen language. For example, the use of the word "vacated" in contrast to "lifted" or "terminated" was not examined. Nor was the materiality of the suit being post-petition rather than pre-petition addressed, other than by McEntee's simple assertion that she would not have agreed to the order had she known that the suit was post-petition. But, the reason for that is not self-evident given the agreement to limit recovery to the insurance coverage. And, it is also unfortunate that the parties did not return to the bankruptcy court to see if it would clarify the order in light of this court's remand.

What was established is that there was either a mutual mistake of fact or no meeting of the minds. In this regard, inquiry into the intent of the agreed order's authors proved to be unhelpful in establishing the meaning of the chosen language. As such, we are once again left with the language of the order.

Although ambiguous regarding its retroactivity, it is clear that the intent of the order was to permit the identified suit to go forward provided recovery was limited to the extent of coverage under the insurance policy. On remand, SVS failed to show that "vacate" had an intended meaning contrary to its ordinary and accepted meaning. And given the identification of a particular civil action that was to "resume" and the elimination of the word "institute," SVS's evidence did not establish that the parties shared an understanding that the identified lawsuit would not be permitted to proceed. It is true that SVS makes a strong case that McEntee did not realize that the action was filed post-petition when she agreed to vacate the stay and permit the lawsuit to resume, but SVS has failed to show that the chosen words meant something else.

To be sure, suits in violation of a bankruptcy stay are against public policy, but the undisputed facts are that Cox did not have notice of the bankruptcy petition or the stay until after the personal-injury action was filed, and Cox honored the stay by seeking relief in the bankruptcy court. On this record, there is no reason to believe that the stay relief would not have been granted conditioned on damages being limited to the available coverage had the true facts been known to the bankruptcy court.

I would reverse and permit *Cox I* to proceed.